Good morning, Your Honor. May it please the Court, Counsel. My name is Gregory Fisher. Thank you for hearing Mr. Malik's case today. I represent Dawud Halisi Malik, also known as David Riggins. He was punished for doing what this Court had previously held he had an undeniable right to do, that is, use both his legal religious name and his committed name on his mail. He was punished in reliance on a policy that was adopted after his case was resolved. The policy itself did not appear to be reasonably related to any legitimate penological goal. Certainly, at least, it seemed to be an exaggerated response to any Attorney General's office was sending mail to Mr. Malik that was addressed to Mr. Malik slash Riggins with his prisoner identification also as well. Not only was the policy inconsistently applied for many years, but the policy itself didn't appear to have any real need for it. There was a regulation already in place that addressed how prisoners should use their religious names and their committed names. In fact, Mr. Malik had been following that regulation for all these years. He had always used his name, signing it Mr. Malik slash Riggins with his prisoner identification number. There was never any confusion, never any problem in processing his mail. Even to this day, there would not appear to be any reason or explanation as to why that was not adequate and why that would not meet any of these state's or defendant's prescribed needs. The district court, in looking at this case, correctly concluded that there were genuine issues of material fact that precluded summary judgment regarding the processing of his outgoing mail. The district court granted summary judgment with respect to the incoming mail issue. I would submit respectfully that there's little to distinguish the analysis in either event. The state's avowed justification for this policy with respect to incoming mail was to make sure that mail was properly processed in a timely and efficient manner. It begs anyone's understanding as to how that could not have been done when he was using both his names and his prisoner identification number as well. As noted, the Attorney General's office, the district court, and several other entities had sent mail to Mr. Malik without ever any problems being perceived. Counsel, Mr. Malik is probably well known to the prison mail system, I assume after all of the litigation that he has been involved in. The state tells us that they have 18,000 prisoners and that it is for their convenience to be able to distribute mail efficiently and correctly to be able to do that. So it may be perfectly explainable that Mr. Malik has no trouble receiving his mail irrespective of the order in which he lists his name. That may not be true with respect to others in the mail system. Is there any evidence in the record about anybody else other than Mr. Malik? To my knowledge, there is no evidence that anyone else has ever had any problems on either side of that fence, Your Honor. But the question that you posed... Is there any evidence about anybody in particular? Do we have any other prisoner's names appear in the record? To my knowledge, no, Your Honor. I certainly did not... So the only evidence is with respect to Mr. Malik? Yes, sir. And Mr. Malik is not arguing that he is entitled to some kind of exemption from the rule just for himself? No, Your Honor, he's not. If I may, your question touches upon, I think, what is a critical point in this case, which is beyond the policy on its face, is how it was actually applied. The defendants here have cited and argued an Oregon case, Morrison v. Hall, which I think is very instructive because it provides a useful guiding line. In Morrison, the Oregon Department of Corrections had a policy that was somewhat similar with respect to processing incoming mail. And there is here, there didn't appear to be any problems. However, in both instances, the department relied upon the argument that with this many people, we need to figure out an efficient way to process the mail. That in itself wasn't the major problem because what in Oregon they did, which seems to me to be an entirely reasonable approach, is they didn't use the policy as a means of prohibiting all mail. In Oregon, they said, here's our policy. Here's what we want you to do. However, if you don't comply with this policy or if someone is sending you mail that's not in compliance, we're going to do our best to process the mail anyway. We'll try to figure it out. So it's sort of an as-applied aspect to these policies. I think in Oregon, they did it the right way, which is not to use it as a means of precluding a prisoner from receiving any mail. Mr. Malik, of course, wouldn't be in a position where he could argue another prisoner's rights. And so in terms of what the record reflects, it reflects what happened to him. And what happened to him is I think, frankly, astonishing. I think telling somebody that you can't get any mail, that we're going to refuse to process your mail, and that we're going to delay processing your mail, and we're going to punish you simply because you do what this court said that he had an undeniable right to do, that is use both names. But our court hasn't addressed the order in which names can be used, has it? You know, actually, I think it has. And if you look at the Malik case itself, Your Honor. Which one? The 71F3rd. I'm sorry, let me get, let me find the actual policy that the court was examining. I'm sorry, it was the first case. 16F3rd 330 at 332 describes the actual policy that this court was examining in Malik. And I'm reading from the court's opinion. There are two paragraphs. Letters may be typewritten, printed, or legibly written, and must be concluded with the inmate's full signature and address at the end of each letter. The inmate's committed name, number, and address must appear in the upper left-hand corner of the envelope. And then the next paragraph. The names under which inmates were committed to the custody of the Department of Corrections must be used on all incoming and outgoing mail. Inmates may use another name, but only in addition to their committed name. So that was the policy. But that doesn't say anything about the order in which the names appear, does it? But I think it's implied within the policy itself. This is, you know, perhaps, you know, further afield. However, here, as in the prior case. Is there anything, though, in our decision in Malik 1 that suggests that we said that the inmate could choose which order he can use his names? No, Your Honor. However, what this court did squarely hold was that the inmate would have a right to use both his legal-slash-religion- Yes. There's no argument about that in this case. What you're taking in this case is spelling out a constitutional right to put in a particular order. And maybe that'll turn out to be true. But to say that we've already decided is a little over the top, I think. Well, you would be in a better position than I would be, Judge Fernandez, to instruct me on the court's holding. It's my interpretation- No, you just instructed us on it. And nothing you said backed up what you said first. My interpretation of both the facts and the court's holding is that on these facts, what the court had concluded and instructed us was that inmates had an undeniable constitutional right to use both of their names. Now, I don't take the point- But you say there's no difference when you add in a particular order. I mean, you're adding in a particular order. Yes, we said you have a constitutional undeniable right to use both names. Yes. And? How does that answer the question you're putting before us? And I think it answers it in this way, Your Honor, is that when we look at- we have to define the constitutional right with respect to qualified immunity under Hope Pelzer in terms of what would put a prison official on reasonable notice. I don't think we can or should look at the particular facts of any particular case. That is to say, to the analysis turns on the order of the names. I think instead we have to look at the way this policy is being applied. And I think if we look at it that way, any reasonable prison official would have realized that denying him the right to get all mail, refusing to process his mail, and in fact punishing him, placing him on extra duty just because he is too far, that it goes too far, Your Honor. And that would be the argument that we would make. However, the district court obviously disagreed with that conclusion, yet it nevertheless reached the correct result on the outgoing mail by concluding that there was a genuine issue of material fact with respect to this policy and its application. And whether there was any connection between the stated goals and the actual results of the policy. And in doing that, I think both the outgoing mail and incoming mail parallel each other in the same analysis. Even if this court disagreed with that, however- You know, you're going on and on. You are over your time already. I'm sorry, Your Honor. I think I have- you're right. The red light is on. It's now telling us how far over your time you are. Okay. Let's hear from the Attorney General's office. Thank you, Your Honor. Good morning. May it please the court, my name is Andrea Vingo and I represent the appellees in this matter, Harold Clark et al. Clark asks that this court affirm the district court's ruling that the Washington State Department of Corrections policy requiring inmates to use their committed names first on incoming and outgoing mail doesn't violate the First Mr. Clark is entitled to qualified immunity as this right is not clearly established. Mr. Riggins, first and foremost, has no constitutional right to list his legal name before his committed name on any incoming and outgoing mail. This court has the ability to stop right there and not even engage in a Turner analysis. Coincidentally, or by the way, Mr. Malik has gotten and received all his mail in this case. So that is not the issue. This court, I believe, has set this for argument not on the issue of incoming mail under the Turner standard. That is very clear, especially under the Morrison v. Hall case. The issue is whether this policy is proper as outgoing mail. Counsel has indicated that Turner has Does a different standard apply to our consideration of the outgoing mail policy? No, it does not. Turner is a unitary standard that requires nothing more than a valid rational connection. And that was reiterated in 2001 in the U.S. Supreme Court Shaw case. And so there is one unitary standard. Well, counsel, on the incoming mail, Mr. Malik has perhaps no control over what names are used. So maybe there is a distinction. And you have delivered his incoming mail. Correct. We have gone above and beyond the call of duty to deliver that mail to him. However, by doing so does not mean that we are waiving any sort of right to the policy or the applicability of the policy. Because selective enforcement of a policy or statute has never been held to constitute a waiver under Euler v. Boyles, 368 U.S. 448 and also United States v. O'Brien, 391 U.S. 367. The department has reasons for creating the policy that it put together here in terms of the outgoing mail. That was to ensure that inmates don't misrepresent themselves to the public, to deter criminal intentions because, well, they are 100 percent convicted felons. And then when those inmates do do any of those things to allow, excuse me, the department to aid in investigation when they do. Allowing inmates to use the name of their choosing, whichever they want first, really deprives the department of a clear, reliable and consistent identifier. And let me explain. An inmate's committed name is the name on the inmate's identification badges. It is also the name on that inmate's judgment and sentence. If the inmate has a no contact order, in effect as a result of that judgment and sentence, that committed name is also on there. Well, Counsel, this is kind of, it seems to me like, just an understatement. I mean, an unnecessary distinction that both names are always there. The department knows who he is. It's kind of a tempest in a teapot, it seems to me. And what is it, do you think, that the district court wants to explore, denying some retrenchment at this time? Well, in terms of the outgoing mail policy, I think the district court was just being very, very careful. There is no clearly established law in terms of outgoing mail, which is, of course, likely why this court accepted this case and set it for argument. And we've been talking about it for the last 15 minutes. The Supreme Court has noted a difference in the justifications for restrictions on in-going versus outgoing mail. I understand that you thought that Turner is a unitary standard. But the Supreme Court in Abbott did draw a distinction when it said that the reasons for regulating the incoming mail has to do with maintaining peace among the prison population. And the same considerations don't attend to outgoing mail. So what's the department's justification with respect to the outgoing mail? The justification for the outgoing mail, as I said earlier, is not allowing the inmates to misrepresent themselves to deter criminal attention to the aid in investigations. But it's not a misrepresentation. He's put both his names down. Well, in many respects, it may be a misrepresentation. Take, for example, if Mr. Riggins were to write a letter to the grandchild of Ms. Kremsky, who he strangled to death in 1966 while her husband watched. He puts the name Malik in the return address, say this may in fact violate his judgment and sentence in this case. The victim's family doesn't know Mr. Malik. That would be a violation of any iteration of the policy and the Department of Corrections would be entitled to withhold the letter because it does not contain his committed name on it. He would have to say Malik slash Riggins and put his prisoner number, wouldn't he? No, the rule says that he would have to put Riggins and then his Department of Corrections number. But if we were to disagree with you on the constitutional question and were to allow him to put his name in any order, he would still have to put Riggins and his prison number on there, wouldn't he? That's correct. He would have to put both, including his Department of Corrections number. One thing about the Department of Corrections... So why would that be misleading then to the victim's family if they received a letter from him? It would be confusing to them. They have multiple names on it. The record also supports... Well, now, he can have multiple names on it. We know that he can have both names there. He absolutely can, Your Honor. But the record shows that in many cases he did a combination of his name, Malik slash Riggins, Riggins slash Malik, and it would be confusing to anyone in the public who were in the situation of the victim's family to understand who this was and exactly what was going on. In addition to that, the Department has a legitimate interest in effectively and efficiently processing a mail. This doesn't mean that the staff is incapable of looking at both names, but they have a lot of paperwork to go through. When the mail goes out, what do they do? Do they just log it? Is that what the process is? No. It's much more stringent than that. They need to look at the contents to see the nature of it, if it violates other policies that aren't in this case. So there's no way, no matter what the order of the names, it doesn't interfere with the process? Oh, I disagree. It absolutely does interfere with the process. Because if you look at the first name, say there's an inmate who puts more than one name, there is no limitation by the Department for inmates to change their names, to have multiple names, to change names. But they're allowed that. That's not the issue. The issue is whether you put X first or Y first. That's correct. But by having the possibility of multiple names, the mail staff has to start with the first name on the outgoing mail to check to see if it violates any, say the judgment and sentence and no contact order. And then they have to take the extra time to look at the second name. And if those names are flip-flopped in a way that they shouldn't be, that creates twice the amount of work. And that's like having 36,000 inmates. Now let's say they have the names in the order which you want it. Is the process any different? Yes, it is. They get to look at the first name on the outgoing mail. They get to check through the mail, look to see that there's no prohibition of contact, and then they get to move on. So essentially it doubles their workload. If the inmate were to use his committed name first, does the staff actually check to see do they care what the second name says? What if Riggins decided to just play a joke and put down Riggins slash Smith? They don't care. They don't care. They don't care. They need that one consistent, reliable name to be the one on the top to then check on that. There's been some indications that maybe a better way to go would be to use the inmate's identification number. The problem with the identification number, while the department does also require that on outgoing mail, is the identification number wasn't necessarily on the offender's judgment and sentence or on the no contact order. So the one consistent identifier in this case was the committed name. If we were to agree with the district court and allow a hearing on this, what would the state want to present? Your Honor, I don't think that a hearing in terms of the equitable relief on this case really isn't warranted. The basis for Mr. Riggins' declaratory relief rests almost entirely on claims that were dismissed, and most importantly, he did not appeal in this case. The only remaining claim on appeal for declaratory relief is based on not being allowed to purchase prayer orioles, which, as the record reflects, he was allowed to despite putting a different name, and that's in CR 12 and SCR 61. But the state is challenging the need for the hearing. Your Honor, the state is arguing that no hearing is necessary in this case because of the findings of the district court and because Mr. Riggins didn't appeal the issues upon which there could be declaratory relief. But you didn't. Did you not appeal that? Did not appeal, Your Honor. Then maybe it's not before us. Exactly, Your Honor. Even assuming that Mr. Riggins states a First Amendment claim, Clark is entitled to qualified immunity. Mr. Riggins hasn't shown that a First Amendment right, which he claims was clearly established at the time of the alleged misconduct. Moreover, he has not provided any evidence whatsoever to support a RLUIPA claim or any other First Amendment religious freedom claim in this case. And based upon that, I police ask this Court to affirm the ruling of the district court. Thank you, counsel. Mr. Fisher, you've consumed all of your time. I will allow you one minute if there are things to cry for clarification. Let me ask, is the issue of the order of his name on the outgoing mail not before us? It's not been appealed? I think it has been appealed, Your Honor. Who appealed it? Mr. Malik appealed it. Okay. I think the point, and this was the point I was going to raise, was that his request for declaratory relief quite clearly asked the Court to have the defendant cease withholding his mail. That's at Appellant's Excerpt of Record 21. It's also duplicated at Appellant's Excerpt of Record 11. So even if this Court concluded that the district court resolved all other questions correctly, especially on qualified immunity, that would not affect the outgoing mail issue and his declaratory relief. The district court concluded that there were genuine issues of material fact on the outgoing mail. The district court was correct. You would then go to the declaratory relief, and Mr. Malik would be entitled to that. We would ask the Court to reverse on the incoming mail, affirm on the outgoing mail, and reverse on the declaratory judgment action. Thank the Court very much for hearing Mr. Malik's appeal. Thank you. And thank you, Mr. Fisher, and thank you for participating in the pro bono program. We thank counsel for the argument. Riggins v. Clark is submitted.
judges: Fletcher B. , Fernandez, Bybee